JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Cleveland Development Partnership I, Limited Partnership ("CDP"), appeals the decision of the lower court. Having reviewed the *Page 2 
arguments of the parties and the pertinent law, we hereby reverse and remand to the lower court.
 I {¶ 2} This case involves the repayment of investment funds between CDP and Whiskey Island Partners Limited Partnership ("WIP") concerning the sale of Whiskey Island. On September 13, 2005, plaintiffs-appellees Dan T. Moore ("Moore") and George Russell Lincoln filed a complaint against CDP, seeking $1.6 million in damages, plus interest.
 {¶ 3} CDP answered on November 23, 2005, asserting waiver, estoppel, lack of standing, unclean hands, and plaintiffs' wrongful and inequitable conduct as affirmative defenses. On June 13, 2006, appellees filed their motion for summary judgment. CDP opposed the motion on grounds of equitable estoppel, waiver, standing, and breach of fiduciary duty. On March 13, 2007, the trial court granted summary judgment and entered judgment against CDP in the amount of $1.6 million, plus interest at the statutory rate from December 16, 2004. On April 6, 2007, CDP filed its notice of appeal.
 {¶ 4} In January 1991, Moore formed WIP to acquire the land known as Whiskey Island and manage a proposed 1,500 slip marina development project along Cleveland's lakefront. Moore also formed D.T. Moore, Inc. as the sole general partner of WIP and served as its president. *Page 3 
 {¶ 5} Cleveland Development Advisors, Inc. (CDA) is an affiliate of the Greater Cleveland Partnership and is a civic organization that invests in catalytic real estate projects to help stimulate the Cleveland economy. CDA makes its investment in these projects through investment funds such as CDP. CDP's investors consist of local businesses and foundations.
 {¶ 6} CDA was CDP's sole general partner and, therefore, exercised managerial control over the fund. Joseph Roman has been a vice president of CDA since 1991. Stephen Strnisha became a vice president of CDA in 1995, and remained in that position until 2005. Both Roman and Strnisha were responsible for the day-to-day management and operation of CDP.
 {¶ 7} In 1993, Moore approached CDA and requested that it help fund the Whiskey Island project. Moore made a presentation to CDA's board, and CDA approved a $2.4 million dollar loan in July 1993. At the same time, CDA also became a limited partner in WIP.
 {¶ 8} On July 15, 1993, CDP and WIP entered into a loan agreement in which CDP made a loan to WIP in the amount of $2.4 million. By June 1994, Moore needed additional funding. To attract new capital, he approached CDA and asked it to subordinate repayment of the loan to the interest of a new set of Class A limited partners. CDA agreed, and Moore offered a group of investors the opportunity to *Page 4 
purchase shares of Class A limited partnership units in WIP. Moore sold 30 units to 17 investors for $3 million.
 {¶ 9} As part of this Class A offering, on June 15, 1994, the partners in WIP, D.T. Moore, Inc., CDA, and the new investors signed a Second Amended and Restated Agreement of Limited Partnership. Under the partnership agreement CDA became a Class B partner, and the new investors became Class A partners.
 {¶ 10} WIP and CDP also signed a subordination agreement that day. Under the agreement, the parties agreed that any payment to CDP before the Class A partners were paid would be held in trust by CDP for the benefit of the Class A partners. Specifically, the express terms of _1.05 of the subordination agreement provide that any payment or distribution received by CDP prior to the payment in full of the Class A interests was required to be "held in trust by CDP for the benefit of the Class A Limited Partners and promptly turned over by CDP to the Class A Limited Partners * * *."[1]
 {¶ 11} The subordination agreement also expressly incorporates the terms of the partnership agreement. The partnership agreement, in turn, provides that Moore cannot sell the property without CDA's written consent unless and until the loan is paid in full. WIP "shall not have authority * * * until the CDP loan has been *Page 5 
satisfied and discharged * * * to otherwise sell, assign, transfer, lease, mortgage, pledge, convey or encumber the assets of the partnership without the express written consent of CDA."[2] In addition, the partnership agreement prohibits any of the limited partners from transferring their interest in WIP without CDA's express written consent, so long as the loan has not been satisfied and discharged.[3]
 {¶ 12} WIP experienced problems with the development of the Whiskey Island property. As a result, and beginning in 1996, WIP, with the knowledge and assistance of CDP, undertook extensive, prolonged, and unsuccessful efforts to sell the Whiskey Island property to the city of Cleveland, the Port Authority, and/or Cuyahoga County. However, despite these best efforts, no deal could be agreed upon.
 {¶ 13} By 1999, financial problems were occurring, and WIP was having difficulty meeting some financial obligations. Accordingly, CDP made bridge loans to WIP totaling $675,000 so that WIP could pay off defaulted real estate taxes and submerged land leases. CDP also forgave all accrued interest and $800,000 in principal from the original $2.4 million loan. In the years following the bridge loans, WIP continued to have financial problems. *Page 6 
 {¶ 14} In December 2004, despite initial problems selling the property, WIP finally reached an agreement with Cuyahoga County. Cuyahoga County agreed to purchase, and WIP agreed to sell, the Whiskey Island property.
 {¶ 15} There is some conflict as to the value of the property and details of the agreement. Appellant states in its brief that Moore received an appraisal valuing Whiskey Island at $25 million.[4]
However, on December 8, 2004, Moore sent a letter to Strnisha stating that he had agreed to sell Whiskey Island to Cuyahoga County for $6.25 million.
 {¶ 16} On December 16, 2004, WIP remitted payment to CDP in the amount of $2,706,988.90 in order to timely consummate the sale of the Whiskey Island property. Of the payment, $1.6 million was payment on the CDP loan. After CDP's receipt of the payment, Moore requested the return of the Class A payment to the Class A partners who had not received any payment. CDP disagreed with Moore's position that he was owed the $1.6 million under the subordination agreement and, consequently, did not pay him the $1.6 million he stated that plaintiffs were owed. Appellant now appeals.
 II {¶ 17} Appellant's assignment of error provides the following: "The trial court erred in granting summary judgment." *Page 7 
 III {¶ 18} This court reviews the lower court's granting of summary judgment de novo in accordance with the standards set forth in Civ.R. 56(C). North Coast Cable v. Hanneman (1994), 98 Ohio App.3d 434, 440,648 N.E.2d 875. In order for summary judgment to be properly rendered, it must be determined that:
 "(1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from such evidence that reasonable minds can come to but one conclusion and, reviewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party."
Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327,364 N.E.2d 267. See, also, State ex rel. Zimmerman v. Tompkins, 75 Ohio St.3d 447,448, 1996-Ohio-211, 663 N.E.2d 639.
 {¶ 19} The evidence in the case at bar demonstrates that there are genuine issues of material fact remaining. There is significant disagreement between the parties regarding the actual purpose of the $1.6 million payment made by Moore. Appellant argues that Moore originally intended that the $1.6 million payment specifically pay off the $1.6 million loan. Appellant further argues that Moore changed his mind five months later and that the subordination agreement supports paying him back the full $1.6 million. *Page 8 
 {¶ 20} A review of the record demonstrates that on December 15, 2004, Moore wrote a brief summary letter to Strnisha. Moore also enclosed a second, more detailed, letter with the summary letter. The brief two paragraph summary letter stated the purpose behind a second enclosed letter. Moore was sending the second letter to the Greater Cleveland Partnership Board members. The letter concerned the CDA's request for Moore to close on the sale of Whiskey Island to Cuyahoga County. In this summary letter, Moore stated that his company, WIP, would probably"pay off your $1.6 million, even though our contractual agreement does not require it."[5]
 {¶ 21} While this statement alone is ambiguous and cause for dispute, further clarification can be found in the enclosed second letter. Moore states in his second, more detailed, and enclosed letter: "Nonetheless, as the General Partner and fulfilling our fiduciary responsibility, we need to proceed forward, and will pay off CDA so the transaction will close."[6] The letters provide evidence of a genuine issue of material fact, the purpose behind the payment of the $1.6 million in dispute.
 {¶ 22} In addition to the purpose behind the $1.6 million payment, there are other genuine issues of material fact in dispute in this case. The parties disagree on *Page 9 
whether Moore waived the terms of the subordination agreement. The subordination agreement requires a waiver of the agreement to be "expressly set forth in writing duly signed and delivered on behalf of either such party or a Majority-In-Interest of the Class A Limited Partners."[7]
 {¶ 23} Appellees did not argue that the letters failed to satisfy the subordination agreement requirements that they be "writings" or "duly signed" and "delivered." However, appellees did argue that Moore's representations in the letter, or otherwise, did not constitute a waiver of the subordination agreement. Consequently, there is a dispute as to whether Moore was the owner of a majority-in-interest of the limited partner units at the time of the sale, such that he had the limited partners' authority to waive on their behalf.
 {¶ 24} In addition to the material facts in dispute mentioned above, appellant sent a letter to Moore detailing an alternative proposal for the sale of Whiskey Island.[8] The letter illustrates appellant's position that several material facts are still in dispute. Appellant's letter mentions key facts such as: a $25 million fair market property value, tax deductions, expected donations, bridge loan payments, priority interests, liens, escrow fund payments, and most importantly, the fact that CDA did *Page 10 
not consider the WIP "deal" to be finalized. While some of these facts are less important than others, they do illustrate additional material facts in dispute.
 {¶ 25} We find that the evidence demonstrates significant dispute regarding the purpose behind the $1.6 million payment, the waiver authority of Moore, and several other issues. Therefore, based on the evidence, we find that genuine issues of material fact remain. Wherefore, this court, having considered all the evidence, finds that the lower court erred in its granting of summary judgment.
 {¶ 26} Accordingly, appellant's sole assignment of error is sustained.
 {¶ 27} Judgment reversed and remanded to the trial court for further proceedings consistent with this opinion.
It is ordered that appellant recover from appellees the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., CONCURS WITH SEPARATE OPINION, and ANN DYKE, J., CONCURS
[1] Subordination agreement § 1.05.
[2] Partnership agreement at _4.3(i).
[3] Partnership agreement at _6.3.
[4] December 15, 2004 memo from Moore to Greater Cleveland Partnership Board.
[5] December 15, 2004 letter from Moore to Strnisha. (Emphasis added.)
[6] December 15, 2004 letter from Moore to Greater Cleveland Partnership Board members. (Emphasis added.)
[7] Subordination agreement at _7.0.
[8] December 17, 2004 fax from Strnisha to Moore. *Page 11